FILED

17 SEP 26 AM 11: 28

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LAWSON P. ROBERTS,
    Plaintiff,

-vs-                                              Case No. A-16-CA-1272-SS

STEVEN MNUCHIN, Secretary of Treasury,
    Defendant.

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Steven Mnuchin (Defendant)'s Amended Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [#10], Plaintiff Lawson P. Roberts (Plaintiff)'s Response [#11] in opposition, and Defendant's Reply [#12] in support. Having reviewed the documents, the governing law, and the file as a whole, the Court enters the following opinion and order DENYING the motion to dismiss, or, in the alternative, Motion for Summary Judgment.

### Background

This case concerns an employment dispute. Plaintiff is an employee of the Internal Revenue Service (IRS), which falls under the Department of the Treasury. Suing Steven Mnuchin, in his official capacity as Secretary of the Treasury, Plaintiff alleges the Department of the Treasury (the Treasury) retaliated against and harassed him for his participation in multiple Equal Employment Opportunity (EEO) conflict resolution processes.

As an initial matter, Plaintiff alleges he was improperly charged with being absent without official leave (AWOL) and suspended for fifteen days for attending a mediation where he

represented a fellow employee in the summer of 2015. Compl. [#1] at 4. In response to the alleged retaliation, Plaintiff filed an EEO pre-complaint on his own behalf and agreed to mediate with the IRS. *Id.* at 5. Due to an illness, Plaintiff's attorney requested the mediation be held at her office rather than the IRS offices. *Id.* The EEO counselor agreed to hold the mediation at the office of Plaintiff's attorney on October 1, 2015, at 9:00 a.m. *Id.* at 6.

Although Plaintiff previously informed his managers of the mediation, one of Plaintiff's managers did not attempt to notify Plaintiff that he "would not be allowed travel time" until the afternoon of September 30, 2015.[1] *Id.* Plaintiff was unavailable and did not learn he would not be granted travel time for the mediation. *Id.* at 6–7. Thus, Plaintiff attended the October 1st mediation and only learned he would not be granted travel time when he returned to work following the mediation's conclusion. *Id.* at 7. According to Plaintiff, "[w]hen Plaintiff refused to use his own time" to cover the travel time, he was presented with a second AWOL charge and a form indicating he "violat[ed] the code of Ethics and Conduct" on three occasions (the Form). *Id.* at 7–8; Compl. [#1-2] Ex. A (December 2015 Employment Discrimination Compl.) at 12–13.

In reaction, while his first EEO pre-complaint was still pending, Plaintiff filed a second EEO pre-complaint on November 9, 2015. *Id.* at 9. Plaintiff and the IRS subsequently agreed to another mediation, which took place on December 10, 2015. *Id.* The mediation was ultimately unsuccessful and Plaintiff filed a formal complaint of employment discrimination with the Treasury on December 31, 2015. *Id.*; December 2015 Employment Discrimination Compl. The IRS and Plaintiff again agreed to participate in mediation. *Id.* Following this third attempt at mediation, the IRS and

---

[1] Neither party explained what it means to "be allowed travel time," and the Court assumes this phrase refers to an employer's practice of marking the time when an employee is offsite as excused.

Plaintiff reached a settlement. *Id.* at 9–10; Compl. [#1-3] Ex. B (Settlement Agreement). According to Plaintiff, as part of the Settlement Agreement, the IRS agreed to remove the AWOL charges, remove the Form from Plaintiff's file, and pay nominal attorney's fees. *Id.* (citing the Settlement Agreement). In return, Plaintiff agreed to withdraw his pending complaints. Settlement Agreement at 1.

On July 18, 2016, Plaintiff received a notice proposing his removal from the IRS.[2] Compl. [#1-4] Ex. C (Proposed Removal Notice). On August 3, 2016, the IRS provided Plaintiff with the materials supporting the Proposed Removal Notice, which included the Form. Compl. [#1] at 11; Compl. [#1-5] Ex. D (Supporting Materials) at 1. On August 5, 2016, through his attorney, Plaintiff filed a letter outlining his allegations regarding systematic retaliation and the IRS's bad faith in drafting and executing the Settlement Agreement with the Treasury's Office of Civil Rights and Diversity (OCRD). Compl. [#1] at 11. In response, via a document titled "Department of the Treasury Agency Final Decision" and dated August 26, 2016, the IRS informed Plaintiff it found no breach of the Settlement Agreement because Plaintiff "failed to notify the OCRD within 30 days of when he discovered or should have known of the alleged noncompliance." Compl. [#1-6] Ex. E (Treasury Final Decision) at 7–9, 6. Plaintiff asserts he received the Treasury Final Decision on September 6, 2016. Compl. [#1] at 11–12.

On October 10, 2016, Plaintiff filed a second formal complaint with the Treasury concerning the Proposed Removal Notice. Compl. [#1] at 12–13.[3] A little less than two months later, on

---

[2] The consequences of proposed removal are unclear. While the Court assumes removal is synonymous with termination, the Court will continue to use the term "proposed removal" for accuracy.

[3] Neither party provided the Court with a copy of the October 2016 complaint.

December 5, 2016, Plaintiff filed this lawsuit. Plaintiff contends the Treasury, through the actions of the IRS, unlawfully retaliated against him for filing complaints and participating in the EEO process in violation of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a). *Id.* at 12. Additionally, Plaintiff asserts "a party can breach an agreement by exhibiting bad faith in the execution of the terms" and claims the IRS acted in bad faith by misleading him in drafting the Settlement Agreement. *Id.*

## Analysis

Defendant moves to dismiss, arguing the Court lacks subject matter jurisdiction because Congress has not waived sovereign immunity for Plaintiff's particular claims. Alternatively, Defendant contends he is entitled to summary judgment on the same grounds.

### I. Legal Standard

The Federal Rules of Civil Procedure require this Court to dismiss a cause for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998); FED. R. CIV. P. 12(b)(1). "Sovereign immunity is jurisdictional in nature." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Waivers of sovereign immunity must be clearly stated by the federal government. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Claims barred by the invocation of sovereign immunity "can be dismissed only under Rule 12(b)(1) and not with prejudice." *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996).

"[T]he burden on a rule 12(b)(1) motion is on the party asserting jurisdiction." *Castro v. United States*, 608 F.3d 266, 268 (5th Cir. 2010) (en banc). Under appropriate circumstances, the

Court may determine the issue of subject matter jurisdiction based upon "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

## II. Application

Here, Defendant claims Congress has not waived sovereign immunity (1) for discrimination or retaliation claims not first exhausted through the proper administrative process or (2) for an action alleging breach of a settlement agreement. Mot. [#10] at 1. Plaintiff responds he has exhausted the administrative remedies for the claims raised in this case. Resp. [#11] at 2, 4. Plaintiff also contends he brings only claims for unlawful retaliation in violation of 42 U.S.C. § 2000e-3(a) and not a stand-alone breach of contract claim. *Id.* at 1–4. Specifically, "[i]t is Plaintiff's position that Defendant's conduct with regard to the settlement agreement and the manner of the breach are part of the retaliation and harassment." *Id.* at 2. Thus, the Court only examines whether it has subject matter jurisdiction over Plaintiff's retaliation claims. *Cf. Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("[T]he plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.")

Prior to filing suit under Title VII, a plaintiff must exhaust his administrative remedies. *See* 42 U.S.C. §§ 2000e-5(e), 2000e-16(c). Administrative remedies are considered exhausted "when the federal agency gives notice of its final action, or when 180 days have passed since the initial formal charge was filed with the agency." *See Thomas v. Napolitano*, 449 F. App'x. 373, 375 (5th Cir. 2011) (per curiam) (citing § 2000e-16(c)).

Defendant claims Plaintiff filed his administrative claims for discrimination and retaliation on March 9, 2017, and May 3, 2017 (2017 Complaints). Mot. [#10] at 2.[4] Thus, according to Defendant, Plaintiff has not exhausted his claims for the 2017 Complaints because he has not received a final action on those complaints and Plaintiff did not file this lawsuit 180 days after filing the 2017 Complaints. *Id.* at 6

However, Defendant appears to confuse the 2017 Complaints with the complaints at issue in this case. Although potentially related, the substance of this lawsuit appears to differ from the substance of the 2017 Complaints. This lawsuit alleges the IRS retaliated against Plaintiff for participating in EEO processes by settling his prior complaints in bad faith and improperly using evidence to support his proposed removal. *See* Compl. [#1]. By contrast, the 2017 Complaints concern the denial of sick leave, performance evaluations, discipline, termination, and unfavorable work assignments, among other items. *See* Treasury Investigation Letters.

Plaintiff, on the other hand, has provided evidence he received a final action from the Treasury. *See* Treasury Final Decision. The Treasury Final Decision definitively stated the "Complainant is not entitled to relief" in response to Plaintiff's allegations of systematic retaliation and bad faith in drafting and executing the Settlement Agreement. *Id.* at 2, 7–9. Furthermore, the Treasury Final Decision informed Plaintiff he had "the right to appeal to the Equal Employment Opportunity Commission (EEOC) or to file a civil action in an appropriate United States District Court." *Id.* at 3. The Treasury Final Decision specifically indicated Plaintiff was required to "file a civil action . . . within 90 days after you receive this final decision . . . ." *Id.* at 4 (emphasis omitted).

---

[4] Neither party provided the Court with copies of the 2017 Complaints. Defendant only provides copies of Treasury letters accepting the 2017 Complaints for investigation. *See* Mot. [#10-1, #10-2, #10-3] Exs. 1–3 (Treasury Investigation Letters).

Initiating this lawsuit on December 5, 2016, Plaintiff filed this civil action within ninety days of receiving the Treasury Final Decision. Consequently, Plaintiff exhausted his administrative remedies before he filed his retaliation claims.

## Conclusion

Because Plaintiff carried his burden to establish this Court's subject matter jurisdiction, the Court denies Defendant's motion to dismiss, or, in the alternative, motion for summary judgment. Accordingly:

IT IS ORDERED that Defendant Steven Mnuchin's Amended Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [#10] is DENIED.

SIGNED this the 25th day of September 2017.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE